[Cite as *State v. Roberson*, 2022-Ohio-2696.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Earle E. Wise, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| TIFFANY ROBERSON, | : | Case No. 2021CA00125 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Canton Municipal
                            Court, Case No. 2021CRB02840


JUDGMENT:                   Affirmed


DATE OF JUDGMENT:           August 3, 2022


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

KRISTEN BATES AYLWARD                  D. COLEMAN BOND
Canton Law Director                    600 Courtyard Centre
                                       116 Cleveland Avenue N.W.
By: JASON P. REESE                     Canton, Ohio 44702
Canton City Prosecutor

AMANDA F. BRUNSON
Assistant City Prosecutor
218 Cleveland Ave. SW
Canton, Ohio 44702

*Baldwin, J.*

**{¶1}** Defendant-appellant Tiffany Roberson appeals her conviction and sentence from the Canton Municipal Court on one count of cruelty to animals. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 22, 2021, a complaint was filed in Canton Municipal Court charging appellant with cruelty to animals in violation of R.C. 959.13(A)(4), a misdemeanor of the first degree. At her arraignment on June 25, 2021, appellant entered a plea of not guilty to the charge.

**{¶3}** Subsequently, a jury trial commenced on October 8, 2021. At the trial, Samuel Phillips testified that he was appellant's neighbor and was able to see her property from his. He testified that he called the police on June 19, 2021 at around 11 a.m. in reference to a dog barking. Phillips testified that the dog had been barking since 2:30 a.m. Phillips testified that he observed a dog tied up in a cage that was covered by a tarp. He testified that he did not see any food or water anywhere. Phillips testified that before he called the police, he went out to check on the dog and that it could not move more than two feet out of the cage. According to him, "it was pretty damn warm that day." Trial Transcript at 89. He testified that the dog's ability to move and exercise freely was restricted.

**{¶4}** On cross-examination, Phillips testified that he could not actually see the dog in the cage and could not see inside the cage because it was covered by a tarp. He testified that the bowls for food and water were outside on the side of the house away from the dog's reach. When asked if he knew if there was food and water inside the cage,

Phillips testified that there was no food and water in the bowls.  Phillips further testified that the cage had dog feces all over the cage and around it.

{¶5} Peggy Phillips, Samuel Phillip's wife, testified that she saw the metal cage covered with a tarp and that the tarp was tucked in on one corner. She testified that it was very humid and hot that day and that there was no way for air to get through. Peggy Phillips further testified that she did not see food or water and that the dog did not have room to move.  She testified that she never saw the dog out of the cage and guessed that the dog was in there for weeks. On cross-examination, Peggy Phillips testified that she observed appellant's house daily because her yard faced it. She testified that she lifted up the tarp to the cage on a different occasion and that she did not actually see the dog inside its cage on June 19, 2021.

{¶6} Jolene Gregel, the kennel manager for the Stark County Humane Society, testified that Ohio law requires that dogs outside for more than 15 minutes must have a shelter to escape the elements whether it is a house or a pen. A pen is usually a fenced-in open area where the dog can run loose while a house has a place to escape the elements. A house would require enough room for the dog to walk in, stand up and turn around.

{¶7} Gregel testified that she was not present when the dog was found. She, however, observed the cage and that air flow could not get through because the tarp was zip-tied on the sides and the back and the front was tucked in. She testified as follows when asked what would happen to an animal in that container under the weather conditions that day.

**{¶8}** Q: Do you remember what the morning - - what the morning weather was like? Was it sunny? Was it rainy?

**{¶9}** A: Um, I - - I don't remember. They said it was raining. I don't remember that. I know if was very humid though so it probably had rained earlier in the day and it was very hot. I had the air conditioning on which I don't normally use.

**{¶10}** Q: What would that do to an animal in that container?

**{¶11}** A: Um, if kept in the container like that without being checked on, it could cause heat exhaustion and heat stroke, liver failure, kidney failure. Especially with no water and no air to breathe. It - - it could lead to other dire consequences including the animal passing.

**{¶12}** Trial Transcript at 121-122. Gregel described the cage as a metal pop-up used to hold animals for a couple of hours and testified that the dog would not have been able to freely move or exercise in the case. Gregel further testified that appellant told her that the dog had been in the cage from 10:00 p.m. the night before until 11:30 a.m. the following morning which indicates that the dog had been in the cage for over 12 hours. She testified that it was not safe for a dog to be in a cage that long because, due to the tarp, no one would have known that she was in the cage unless she was barking or whining.

**{¶13}** On cross-examination, Gregel testified that she observed the dog after its removal by the police and that the dog was medically evaluated at the Humane Society and found to be normal and healthy without any medical issues being noted for a lack of airflow or heat exhaustion. She testified that it was not humane for an animal to be kept in a cage with a tarp covering, but that she did not know how long or how often the dog

was in that situation. Gregel admitted that at the Humane Society, the dog is confined to the cage for 20 hours per day, but testified that it was not an enclosed cage and had no top on it, so that there was free flowing air. In addition, the facility was air conditioned.

{¶14} On redirect, Gregel testified that while the Humane Society was a controlled environment with air conditioning and a good air exchange, the cage that the dog was found in had a lot of humidity, stagnant air and no air flow. The air quality was nowhere near as good as at the shelter. In addition, the dog had no ability to move and get wholesome exercise in her cage while at the shelter, the dog could "still move around and walk around and play and bounce in our kennels." Trial Transcript at 158. The dogs also are taken out to run in a fenced in enclosure.

{¶15} Appellant testified at trial that she was evicted from her home in May of 2021 and was staying at the residence on Second Street on a temporary basis until she could find other housing. She testified that the residence on Second Street was not pet friendly so she could not bring the dog inside the residence. Appellant testified that the cage was only a temporary arrangement for nighttime until she could obtain alternative housing and that the dog was rarely in the cage during the day when the sun was out. She testified that she put the tarp over the cage to protect her dog and that the tarp was not tucked under all around the cage when she left her house on June 19, 2021.

{¶16} Appellant testified that she walked a lot every day and that she took the dog with her. She testified that she always left food and water in the cage for the dog. On cross-examination, appellant testified that the dog did not need to have enough room in the cage to get wholesome exercise because she did not need it because she was out and about with appellant and only slept in the cage. Appellant testified that airflow could

get into the dog's cage and that she did not tuck the tarp under the front of the cage, but someone tampered with the tarp. She testified that she only zip-tied the tarp on the ends. Appellant testified that she did not have the dog with her on June 19, 2021 because she took the bus to the laundromat and the dog could not go on the bus.

**{¶17}** Officer William Guthrie testified that he knew appellant from her visits to the Refuge of Hope where he worked security. He testified that he saw appellant two or three time a week and that she often had the dog with her. He further testified that he didn't see the dog on June 19, 2021.

**{¶18}** At the conclusion of the evidence and the end of deliberations, the jury, on October 12, 2021, found appellant guilty of cruelty to animals. As memorialized in a Judgment Entry filed on October 14, 2021, appellant was ordered to serve one hundred eighty (180) days in jail with all but one (1) day suspended and was placed on two years of probation. The trial court further ordered the forfeiture of appellant's dog.

**{¶19}** Appellant now appeal, raising the following assignments of error on appeal:

**{¶20}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT FOR THE OFFENSE OF CRUELTY TO ANIMALS IN VIOLATION OF R.C. 959.13(A)(4)."

**{¶21}** "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OT THE EVIDENCE PRESENTED, AN MUST BE REVERSED."

I, II

**{¶22}** Appellant, in her two assignments of error, argues that her conviction for cruelty to animals is against the manifest weight and sufficiency of the evidence. We disagree.

**{¶23}** The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held as follows:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶24}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶25}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶26}** Appellant, in the case sub judice, was convicted of cruelty to animals in violation of R.C. 959.13(A)(4). Such section states, in relevant part, as follows:

**{¶27}** (A) No person shall:…

**{¶28}** (4) Keep animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure without wholesome exercise and change of air, …

**{¶29}** We find that, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that appellant kept her dog in an enclosure without wholesome exercise and change of air. There was testimony that the dog was kept in a metal enclosure that was too small for her stature and that was covered and sealed with a tarp on a hot and humid day. There was testimony that the enclosure did not allow the dog to get free flowing air or wholesome exercise. Appellant's neighbors testified that the dog was rarely left out of the cage which was regularly covered by a tarp. Jolene Gregel testified that appellant told her that the dog had been kept in these conditions for at least twelve hours.

**{¶30}** While appellant argued that she demonstrated that the dog did receive wholesome exercise through her testimony and the testimony of Officer Guthrie and that she testified that she did not tuck the tarp under the cage, the jury, as trier of fact, was in the best position to assess the credibility of the witnesses. Moreover, as is stated above,

there was testimony that the dog was confined in a covered cage for extended periods of time.

**{¶31}** Appellant also argues that the jury was not properly instructed and lost its way. Appellant contends that the testimony of Gregel regarding the laws to keep animals outside cages was improper as it was the role of the trial court to instruct the jury on law, not the role of the State's witness. Appellant also contends that the "law requirements" described by Gregel are not requirements or duties imposed under R.C. 959.13(A)(4) and that, as such, this improper testimony by Gregel clearly confused the jury and caused it to lose its way and create a manifest miscarriage of justice.

**{¶32}** However, we concur with appellee that the jury could have easily come to the conclusion that the dog did not have enough exercise or air within the cage that she was enclosed in for twelve hours. The jury, based on appellant's admission to Jolene Gregel that the dog had been in the cage for more than twelve hours and the physical condition of the cage on June 19, 2021, had more than enough evidence to determine that appellant committed the offense of cruelty to animals. There was testimony that appellant knowingly confined her dog in a cage outside and covered the cage with a tarp that restricted airflow, causing her dog to be confined in hot, stagnant air, and that the dog was confined in this manner for extended periods of time, preventing the dog from enjoying wholesome exercise. We further find that the jury did not lose its way and that appellant's case is not the exceptional case where the evidence weighs heavily against her conviction.

**{¶33}** Based on the foregoing, we find that there was sufficient evidence to convict appellant of cruelty to animals and that her conviction was not against the manifest weight of the evidence.

**{¶34}** Appellant's two assignments of error are, therefore, overruled. Accordingly, the judgment of the Canton Municipal Court is affirmed.

By: Baldwin, J.

Wise, Earle, P.J. and

Gwin, J. concur.